The **GALLATIN GROUP, Larken, Inc., and Gallatin Hotels Income Plus Limited Partnership I, Appellants–Defendants,**

v.

**CENTRAL LIFE ASSURANCE COMPANY, Appellee– Plaintiff.**

No. 02A03–9404–CV–157.

Court of Appeals of Indiana.

May 12, 1995.

---

J. Richard Ransel, James R. Byron, Thorne, Grodnik, Ransel, Duncan, Byron & Hostetler, Elkhart, for appellants.

Michael P. O'Hara, Joseph G. Bonahoom, Barrett & McNagny, Fort Wayne, for appellee.

## OPINION

HOFFMAN, Judge.

Appellants-defendants the Gallatin Group, Larken, Inc., and Gallatin Hotels Income Plus Limited Partnership I (collectively referred to as "Defendants") appeal from a summary judgment in favor of appellee-plaintiff Central Life Assurance Company on Count III of a three-count mortgage fore-

closure complaint seeking a personal money judgment. The designated facts relevant to this appeal are set forth below.

In August of 1990, Gallatin Hotels, a limited partnership, entered into a construction loan agreement (the Agreement) with Central Life for the purpose of renovating a hotel in Warsaw, Indiana. The loan was evidenced by a promissory note (the "1990 Note") payable to Central Life. The 1990 Note was executed by Gallatin Hotels, as borrower, and by Gallatin Group, as general partner of Gallatin Hotels, and signed by Larken, Inc., J.P. Goan Company,[1] and Brandon Financial Corp.,[2] general partners of Gallatin Group. The terms of the Loan Agreement are expressly incorporated into the 1990 Note. To secure payment on the 1990 Note, Gallatin Hotels also executed a mortgage in favor of Central Life on the real estate and a security interest in Gallatin Hotels' personal property.

Gallatin Hotels failed to make the payments required under the 1990 Note. On December 1, 1990, Central Life declared a default and the entire principal, accrued interest, and all other cost and expenses became due. Under the terms of the 1990 Note, Gallatin Hotels, as Borrower, is personally liable to Central Life for "the amount of any rents or other income arising with respect to the mortgaged premises which is retained by Borrower [Gallatin Hotels] other than for the repayment of normal and customary expenses for the ownership or operation of the mortgaged premises and not delivered to Lender [Central Life] after Lender has declared a default...."

On June 4, 1992, Central Life filed its complaint to foreclose its non-recourse notes and mortgages[3] against Gallatin Hotels' property. Thereafter, Central Life was granted leave to file an amended complaint. The amended complaint added Count III seeking a personal money judgment against

---

1. A default judgment was entered against J.P. Goan Company on April 28, 1993. Goan was also included in the entry of summary judgment; however, Goan is not participating in this appeal.

2. Brandon Financial Corporation is currently in bankruptcy, and, thus, all proceedings against it have been stayed.

3. In addition to the 1990 loan, in May of 1986, the Gallatin Group executed a wraparound promissory note, a mortgage, and a security agreement related to the same real estate for $5,800,000.00. The property was later conveyed to Gallatin Hotels.

Gallatin Hotels, Gallatin Group, Larken, J.P. Goan Company, and Brandon Financial Corp. The amended complaint alleged that Gallatin Hotels paid a syndication debt to an unsecured lender, thus, breaching the terms of the 1990 Note and the Loan Agreement.

On May 13, 1993, Gallatin Hotels, Gallatin Group, and Larken filed their motion for summary judgment. Subsequently, Central Life filed its response to the Defendants' motion and filed a counter-motion for summary judgment. In support of its motion, Central Life designated the affidavits of Diane Davidson and Joseph Bonahoom and those allegations in the Amended Complaint which were not denied. A summary judgment hearing was held on August 12, 1993. At the hearing, it was agreed that no dispute existed as to any matters contained in Counts I and II and that Central Life was entitled to an *in rem* judgment.

On October 6, 1994, the trial court granted Central Life's motion for summary judgment as to Count III. Thereafter, the Defendants filed a motion to correct error which was deemed denied. The Defendants now appeal the judgment as to Count III raising two issues which we consolidate and rephrase as: whether the trial court erred by entering summary judgment in favor of Central Life.

In reviewing a motion for summary judgment, this Court stands in the shoes of the trial court. Summary judgment is appropriate if the designated evidentiary matter shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *State Bd. of Tax Com'rs v. New Energy Co.* (1992), Ind. App., 585 N.E.2d 38, 39, *trans. denied.* Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations in the pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371.

██  At the time of filing the motion or response, the party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, and any other matters on which it relies for purposes of the motion. T.R. 56(C). Where material facts are not in dispute, the issue is the

application of the law to the facts. *Fidelity Financial Services v. Sims* (1994), Ind.App., 630 N.E.2d 572, 574. Construction of a written contract is generally a question of law for which summary judgment is particularly appropriate. *Terre Haute First Nat. v. Pacific Employers* (1993), Ind.App., 634 N.E.2d 1336, 1337.

The Defendants argue that under the express terms of the 1990 Note only the "Borrower," i.e., Gallatin, can be held personally liable for any unauthorized payments. In pertinent part, the 1990 Note provided:

> "Notwithstanding any provision to the contrary contained herein or in any document executed in connection herewith, in the event of a default in the payment of this Note or in the observation or performance of the agreements, covenants and conditions contained in this Note, or in the Mortgage or in the Loan Agreement, Lender will proceed solely under the Mortgage and no deficiency or money judgment shall be sought or obtained against the Borrower or its general or limited partners provided that *Borrower shall be personally liable to Lender for:* .... (b) the amount of any rents or other income arising with respect to the Mortgaged Premises which is retained by Borrower other than for the payment of normal and customary expenses for the ownership and operation of the Mortgaged Premises and not delivered to Lender after Lender has declared a default...."

(Emphasis added.) Paragraph 13(b) of the Agreement provides:

> "No Distributions to Borrower. Borrower and Lender agree there shall be no distributions, dividends, profits, or similar payments to Borrower or from Borrower to any of its venturers, partners or shareholders for as long as the Note remains outstanding and unpaid."

██  Under the Revised Uniform Limited Partnership Act, a general partner of a limited partnership has the same liabilities as a partnership without limited partners to persons other than the partnership and the other partners. *See* IND.CODE § 23–16–5–3 (1933 Ed.). It is well established that in a

partnership the partners are bound by the contracts of each other when made in the scope of the firm's business. *Bay v. Barenie* (1981), Ind.App., 421 N.E.2d 6, 9. As a general rule, members of a partnership are jointly liable for all of the partnership's indebtedness. *See* IND.CODE § 23-4-1-15 (the Uniform Partnership Act). However, the terms of a contract may be such as also to bind the partners individually. 23 I.L.E. Partnerships § 81; *Winslow et al. v. Wallace, Receiver* (1888), 116 Ind. 317, 321, 17 N.E. 923, 924 (creditor who holds a note made by a firm and endorsed by the individual partners, has a valid joint obligation against the firm and at the same time a distinct, several, and separate obligation against those who have signed as endorsers); *see also, Lewis v. Joseph Hartley & Sons Co.* (1949), 119 Ind.App. 468, 472, 83 N.E.2d 438, 439-450, *trans. denied* (where there was evidence that defendants jointly contracted with plaintiff and the defendants acting individually and in concert induced the plaintiff to contract with them, defendants were individually liable, notwithstanding some evidence which might indicate that they were doing business as partners).

Here, the 1990 Note set forth the conditions under which the "Borrower" became personally liable. The "Borrower" defaulted in the payment of the 1990 Note. Further, the "Borrower" made a payment of rents and other income of $160,000.00 to an unsecured syndicated lender which was not a normal and customary expense as defined in the 1990 Note after default was declared and with due notice under the terms of the 1990 Note. By operation of law, the "Borrower" included the Defendants, Gallatin Hotels, Gallatin Group, a general partner of the limited partnership and Larken, a general partner of Gallatin Group, who were also endorsers of the 1990 Note. Thus the trial court did not err in granting summary judgment in favor of Central Life.

The Defendants also argue that Davidson's affidavit did not meet the requirements of T.R. 56(E). Specifically, they claim nothing existed in the affidavit which demonstrated that Davidson, as an officer of Central Life, had personal knowledge of the matters sworn to in her affidavit.

Affidavits in support of motions for summary judgment must be made on personal knowledge, shall affirmatively show that the maker is competent to testify on matters included therein, and must set forth such fact as would be admissible into evidence. *Indiana University Hospitals v. Carter* (1983), Ind.App., 456 N.E.2d 1051, 1057. However, an affidavit need not contain an explicit recital of personal knowledge when it can be inferred from its contents that the material parts thereof are within the maker's personal knowledge. *Skaggs v. Merchants Retail Credit Ass'n* (1988), Ind.App., 519 N.E.2d 202, 203; *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 730, *trans. denied.*

In the present case, the problem with the affidavit, if any, is not that it was based on lack of personal knowledge, rather, the affidavit was not specific enough. In her affidavit, Davidson stated that as an officer of Central Life she had knowledge of the manner of payments and the amounts due and owing from the Defendants and that she had access to Central Life's records. She further stated that after defaulting on the 1990 Note the Defendants made an unauthorized payment to an unsecured syndicated creditor. Davidson, however, failed to state how she obtained such knowledge.

Despite the lack of specificity, the Defendants have waived any claim of deficiency in Davidson's affidavit when they failed to file a timely objection or motion to strike the affidavit. Pursuant to T.R. 56, the complaining party has a duty to direct the trial court's attention to a defective affidavit. *Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595, 600; *Avco Financial Services v. Metro Holding* (1990), Ind.App., 563 N.E.2d 1323, 1327. An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and formal defects are waived in the absence of a motion to strike or other objection. *Avco,* 563 N.E.2d at 1327.

The Defendants filed their motion for summary judgment and memorandum in support thereof on May 13, 1993. As to Count III of

Central Life's amended complaint, the Defendants asserted that there were no facts material to the trial court's decision which were in dispute. The Defendants further contended that even if Gallatin Hotels made a payment of rents and other income to an unsecured creditor, which was not in its normal and customary expense as defined in the 1990 Note, neither the Gallatin Group nor Larken could be held personally liable. Central Life filed its response to the Defendants' motion for summary judgment and a counter-motion for summary judgment on June 7, 1993. Central Life's counter-motion was supported by Davidson's affidavits and an affidavit of attorney's fees. The Defendants filed neither a reply to Central Life's motion for summary judgment nor any affidavits in opposition thereto. At the August 12, 1993 summary judgment hearing, the Defendants agreed that they were asking the court to interpret the provisions of the 1990 Note setting restrictions on the use of the funds. At no time during the hearing did the Defendants argue that Davidson's affidavit was defective. The Defendants instead waited until the filing of their proposed findings of fact and conclusions of law to first raise this issue which was again raised in the motion to correct error. Any objection to Davidson's affidavit was untimely. The Defendants' failure to raise an objection to Davidson's affidavit prior to the filing of their proposed findings of fact and conclusions of law, constitutes a waiver of the issue. *Cf. Enderle v. Sharman* (1981), Ind.App., 422 N.E.2d 686, 691 (where there is no showing of gross injustice, the motion to correct error did not preserve the objection concerning consideration of the affidavit by the trial judge and the plaintiff waived his argument by failing to raise these objections at the summary judgment hearing).

Further, the Defendants' contention that they were entitled to rest on the allegations set forth in their answer to Central Life's amended complaint is also unpersuasive. Trial Rule 56(E) provides in pertinent part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him...."

T.R. 56(E); *Pitcock v. Worldwide Recycling, Inc.* (1991), Ind.App., 582 N.E.2d 412, 415. In the present case, the record is clear: the Defendants did not file any response to Central Life's counter-motion nor did they submit any opposing affidavits; thus, the Defendants may not now rely on the general denials made in their answer to the amended complaint. The judgment of the trial court is affirmed.

Affirmed.

STATON and GARRARD, JJ., concur.